UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALLIED SHIPYARD, INC. AND THE GRAY INSURANCE COMPANY<br><br>v.<br><br>CHUBB EUROPEAN GROUP, SE | CIVIL ACTION<br><br>NO.<br><br>SECTION "_____"<br><br>JUDGE _____<br><br>MAGISTRATE _____ |

## COMPLAINT FOR DAMAGES AND DECLARATORY JUDGMENT ON A MARINE INSURANCE POLICY

**NOW INTO COURT,** through undersigned counsel, come Allied Shipyard, Inc., and The Gray Insurance Company, and file this Complaint for Damages and for Declaratory Judgment, pursuant to 28 USC §2201, Rule 57, FRCP, 28 USC § 1333 and Rule (h), FRCP, seeking damages and a declaration that the insurance company Chubb European Group, S.E., owes first party property marine hull insurance coverage and damages on a primary basis to Allied Shipyard, Inc. on a claim filed for sinking of Allied Drydock No. 2, and pursuant to subrogation from Allied to Gray, for Gray's payments for wreck removal of said vessel, and respectfully represents as follows:

### PARTIES

**1.**

Plaintiff Allied Shipyard, Inc. ("Allied") is a company domiciled and organized under the laws of Louisiana, with a principal place of business in Larose, Louisiana.

**2.**

Plaintiff The Gray Insurance Company ("Gray"), is an insurance company domiciled and organized under the laws of Louisiana, with a principal place of business in Metairie, Louisiana.

**3.**

Defendant Chubb European Group, SE, trading under the name of Chubb Global Markets - Marine, is a foreign insurance company in the London insurance market, providing coverage for certain marine insurance risks on a surplus lines basis.

## Jurisdiction and Venue

**4.**

This Court has jurisdiction over this action pursuant to 28 USC § 1333 (maritime jurisdiction) and Rule 9(h), FRCP, in that it involves a marine insurance contract, and pursuant to 28 USC § 2201, et seq., in that plaintiffs seek declaratory relief, pursuant to the federal Declaratory Judgment Statute, and Rule 57, FRCP.

**5.**

Venue is proper in this district, pursuant to 28 USC § 1391 (a), because the defendant insurer is subject to personal jurisdiction in this district through its insurance business with insureds in this state and because plaintiff's insurance policy was issued in this district and because the sinking of Allied's vessel occurred in this district.

## Factual Background

**6.**

This action seeks damages and declaration of the rights and responsibilities of Defendant Chubb with respect to a marine insurance policy which Defendant issued to Allied for first party, property hull insurance risks, for the policy period August 1, 2019, to August 1, 2020.

**7.**

Defendant's marine insurance policy, unique market reference no. B0507RH190021, (copy annexed as Exhibit 1) was delivered to the licensed Louisiana surplus lines broker USI Southwest, Inc. for Allied in August 2019, for coverage of certain vessels owned by Allied and listed on Allied's Schedule of Vessels, including Allied's Drydock No. 2.

**8.**

On August 1, 2019, the Allied Drydock No. 2, while in the process of drydocking a vessel at the Allied shipyard in Larose, Louisiana, experienced a catastrophic failure, resulting in the "total loss" of said vessel, per the terms of the marine hull insurance policy. Said vessel's agreed value, per the hull insurance policy is $800,000.

**9.**

The insured Allied properly notified Defendant, through its insurance broker USI Southwest, Inc., and Defendant's claims manager, Price Forbes & Partners, Limited, and has provided sufficient proof of loss to the defendant insurer to justify payment on the hull policy for a Total Loss, plus sue and labor expenses.

**10.**

In addition, the insured Allied has fulfilled its obligation and duty under Defendant's hull policy to "sue, labor and travel for, in, and about the defense, safeguard and recovery of the vessel" per the terms of said insurance policy's American Institute Hull Clauses, and said insurance policy's Lazard's Dry Dock Form 107.

**11.**

Those additional "sue and labor" costs of Allied are now estimated at $126,590.33.

**12.**

Allied also had excess commercial general liability insurance from plaintiff The Gray Insurance Company, pursuant to the Gray policy number XSGL-07492, (copy annexed as Exhibit 2) for the policy period August 1, 2017, to August 1, 2020.

**13.**

The Gray liability policy issued to Allied, via insurance broker USI Southwest, Inc., was not a first party property insurance policy like Defendant's, but the Gray policy did include an Endorsement providing certain vessel "wreck removal" coverage to Allied. However, said Endorsement specifically provided that "We [Gray] shall not pay the costs and expenses for the removal of the wreck that would be covered by hull insurance under the hull policies covering the described watercraft . . ."

**14.**

The insured Allied has made claim, with sufficient proof of loss, to Defendant, but Defendant has denied and/or refused to provide coverage for said claim, which amounts to a total loss of said vessel, plus sue and labor expenses.

**15.**

Both the insured and Gray made demand upon Defendant to provide coverage for the sinking of Allied's dry dock under Defendant's hull insurance policy, to pay Allied for the total loss of said vessel, and for the sue and labor expenses incurred by Allied, including the salvage and/or removal of the wreck. Allied made a tender of abandonment to Defendant, which Defendant refused.

**16.**

Thereafter, Gray paid for the wreck removal of the dry dock by a contractor, BMG, hired by Allied, in the amount of $475,000, which should have been paid by Defendant.

## Insured Allied's Cause of Action

**17.**

Allied is the named insured on the Defendant's hull policy, issued through Price Forbes, to Allied, via placement by Allied's broker USI Southwest.

**18.**

The hull policy provides first party property insurance coverage for Allied's Dry Dock No. 2 at the agreed insured value of $800,000, for the aforementioned sinking, pursuant to terms in the Lazard's Dry Dock Form 107, including, to wit:

> TOUCHING THE ADVENTURES AND PERILS which we, the said Assurers, are contented to bear and take upon us, they are of the Seas, Rivers, Lakes, Harbours, Men-of-War, Fire, Enemies, Pirates, Rovers, Thieves, Jettisons, Letter of Mart or counter Mart, Surprisals, Taking at Sea Arrests, Restraints and Detainments of all Kings, Princes and Peoples of what nation condition or quality soever, Barratry of the Master and Mariners, Explosions, Riots, or other causes of whatsoever nature arising either on shore or otherwise, causing Loss of or injury to the Property hereby insured, and all other Perils, Losses and Misfortunes that have or shall come to the Hut, Detriment, or Damage of the said Dock, & . . . or any part thereof. And in case of any Loss or Misfortune, it shall be lawful for the Assured, their Factors, Servants, and Assigns, to sue, labour, and travel for, in, and about the Defense, Safeguard and Recovery of Said Dock, & c, or any part thereof, without prejudice to this Insurance, to the charges whereof the Assurers will contribute according to the Rate and Quantity of the sum herein assured. And it is expressed declared and agreed that no act of the Insurer or Insured in recovery, saving or preserving the property insured shall be considered as a waiver or acceptance of abandonment.
>
> THIS INSURANCE ALSO SPECIALLY TO COVER LOSS OF, OR DAMAGE TO THE HULL OR MACHINERY, THROUGH THE NEGLIGENCE of Masters, Charterers, Mariners, Mechanics, Laborers, Engineers or Pilots, or through explosions, bursting of boilers, breakage of shafts, or through any latent

defect in the machinery or hull, provided such loss or damage has not resulted from the want of due diligence by the Owners of the Dock, or any of them, or by the Manager, Masters, Mates, Engineers, Pilots or Crew not to be considered as part owners within the meaning of this clause should they hold shares in the Dock.

In the event of expenditure under the Sue and Labor Clause, the Underwriters shall pay the proportion of such expenses that the amount insured hereunder bears to the Agreed Value, or that the amount insured hereunder (less loss and/or damage payable under this policy) bears to the actual value of the salved property, whichever proportion shall be less; provided always that their liability for such expenses shall not exceed their proportionate part of the Agreed Value.

If claim for Total Loss is admitted under this policy and sue and labor expenses have been reasonably incurred in excess of any proceeds realized or value recovered, the amount payable under this policy will be the proportion of such excess that the amount insured hereunder (without deduction for loss or damage) bears to the Agreed Value or to the sound value of the vessel at the time of the accident, whichever value was greater; provided always that Underwriters' liability for such expenses shall not exceed their proportionate part of the Agreed Value. The foregoing shall also apply to expenses reasonably incurred in salving or attempting to salve the vessel and other property to the extent that such expenses shall be regarded has having been incurred in respect of the vessel.

And further:

IN ASCERTAINING WHETHER THE DOCK IS A CONSTRUCTIVE LOSS the insured value shall be taken as the repaired value, and nothing in respect of the damaged or break-up value of the Dock or wreck shall be taken into account.

### 19.

The said hull policy of Defendant further provides coverage for:

"Subject to the conditions of this Policy, the insurance also covers:

a.     Breakdown of motor generators or other electrical machinery and electrical connections thereto; bursting of boilers; breaker of shafts; or any latent defect in the machinery or hull;

b.     Loss of or damage to the subject matter insured directly caused by:

    1.     Accidents on shipboard or elsewhere, other than breakdown or of accidents to nuclear installation or reactors onboard the insured Vessel;

2. Negligence, error of judgment or incompetence of any person;

Excluding under both "a" and "b" above only the cost of repairing, replacing or renewing any part condemned solely as a result of a latent defect, wear and tear, gradual deterioration or fault of error in design or construction;

Provided such loss or damage (either as described in said "a" or "b" or both) has not resulted from want of due diligence by the Assured(s), the Owner(s) or Manager(s) of the Vessel, or any of them. Masters, mates, engineers, pilots or crew not be considered as part owners within the meaning of this clause should they hold shares in the Vessel."

**20.**

And Defendant's hull policy also provides for the traditional "sue and labor costs" expended by the insured or its agents, to wit:

**SUE AND LABOR**

And in case of any Loss or Misfortune, it shall be lawful and necessary for the Assured, their Factors, Servants and Assigns, to sue, labor and travel for, in, and about the defense, safeguard and recovery of the vessel, or any part thereof, without prejudice to this insurance, to the charges whereof the Underwriters will contribute their proportion as provided below. And it is express declared and agreed that no acts of the Underwriters or Assured in recovering, saving or preserving the vessel shall be considered as a waiver or acceptance of abandonment.

In the event of expenditure under the Sue and Labor Clause, the Underwriters shall pay the proportion of such expenses that the amount insured hereunder bears the Agreed Value, or that the amount insured hereunder (less loss and/or damage payable under this policy) bears the actual value of the salved property, whichever proportion shall be less; provided always that their liability for expenses shall not exceed their proportionate part of the Agreed Value.

If claim for Total Loss is admitted under this policy and sue and labor expenses have been reasonably incurred in excess of any proceeds realized or value recovered, the amount payable under the policy will be the proportion of such excess that the amount insured hereunder (without deduction for loss or damage) bears to the Agreed Value or to the sound value of the vessel at the time of the accident, whichever value is greater; provided always that Underwriters' liability for such expenses shall not exceed their proportionate part of the Agreed Value. The foregoing shall also apply to expenses reasonably incurred in salving or attempting to salve the vessel and other property to the extent that such expenses shall be regarded as having been incurred in respect of the vessel.

**21.**

The insured Allied has incurred $126,590.33 in sue and labor costs due to the sinking of vessel, in addition to the total loss agreed value of the vessel.

**22.**

The insured Allied has properly notified the Defendant hull insurer of the loss and has properly submitted a sufficient Proof of Loss to the Defendant to trigger the commencement of the Louisiana insurance law penalty statutes, La. R.S. 22:1892 and La. R.S. 22:1973, but the Defendant has failed to acknowledge coverage on the hull claim and has failed to make any insurance payments. Therefore Allied is entitled to recover the aforesaid statutory penalties and attorneys fees from the Defendant hull insurer, as well as its total loss hull value of $800,000 and its sue and labor costs (aside from the Blake Marine Group contract payment) of $126,590.33, i.e. $926,590.33.

### Subrogee of Allied and Other Insurer Gray's Cause of Action

**23.**

Plaintiff Gray's excess commercial general liability insurance policy issued to Allied contains a "wreck removal endorsement" which provides coverage to Allied for certain wreck removal costs, <u>but only</u> if such costs regarding the salvaging and raising and removal of the vessel <u>are not covered</u> under the insured's hull insurance, issued by the Defendant.

**24.**

Both Allied and Gray made demand upon the Defendant hull insurer to pay for the costs of protecting, salvaging and removing the sunken dry dock from the site, including a Tender of Abandonment by the Insured to Defendant; but the Defendant hull insurer declined the tender

and refused to pay the proper sue and labor costs, as well as the agreed Total Loss value, to its insured Allied.

**25.**

With all reservation of rights and with agreed subrogation from Allied, plaintiff Gray Insurance thereupon paid Allied's salvor contractor, Blake Marine Group, the sum of $475,000 to salvage and remove the wrecked dry dock, after the Defendant hull insurer refused to acknowledge any hull insurance coverage for the dry dock sinking claim.

**26.**

Plaintiff Gray Insurance is entitled to recover said payments to Blake Marine Group on behalf of Allied pursuant to the Allied/Blake Marine Group contract, the costs of marine surveyors, and its attorneys fees, and statutory penalties from the Defendant, pursuant to both legal and conventional subrogation from Allied to that extent, and pursuant to equity and public policy, in the estimated amount of $485,880.80.

### As to Both Allied's and Gray's Causes of Actions

**27.**

Plaintiffs Allied and Gray demand a declaratory judgment that the hull insurance policy of Defendant covers the claims and costs arising from the sinking of Allied's Dry Dock No. 2.

**28.**

Plaintiffs Allied and Gray demand that the Defendant hull insurer pay damages to plaintiffs for Defendant's unreasonable refusal to acknowledge and pay for the total loss of the dry dock and all sue and labor costs and expenses, including specifically, but not limited to, the contract executed by Allied with Blake Marine Group, for which Gray paid Allied's expenses.

WHEREFORE, Allied and Gray pray that, after due proceedings, this court award declaratory relief and damages to Plaintiffs against Defendant, and enter a Judgment in favor of Allied and Gray against Defendant holding that:

1. The hull insurance policy of Chubb European Group, S.E. provides hull insurance coverage to Allied for the sinking of Allied's Dry Dock No. 2.

2. Allied, and Gray to the extent of its subrogated interest from Allied, are entitled to recover from the Defendant the agreed Total Loss value of Dry Dock No. 2, and all the sue and labor, including salvage and removal, costs arising from the vessel's sinking;

3. Allied and Gray recover the respective Louisiana insurance law penalties and attorneys fees from the Defendant hull insurer, arising from the Defendant's failure to pay the hull claim timely.

4. Any further relief which justice and equity require.

Lee A. Callais(#22014)
310 Ledet Lane
P.O. Box 1575
Larose, Louisiana 70373
Telephone: (985) 693-8877
lacallais@viscom.net

**Attorney for Allied Shipyard, Inc.**

Francis J. Barry, Jr. (#02830)
Audrey E. Gitz (#38235)
fbarry@deutschkerrigan.com
agitz@deutschkerrigan.com
**DEUTSCH KERRIGAN, L.L.P.**
755 Magazine Street
New Orleans, LA 70130
Telephone: (504) 581 5141

**Attorneys for The Gray Insurance Company**

PLEASE SERVE:
**Chubb European Group, SE through**
**Mendes & Mount (Attorneys)**
**750 Seventh Avenue**
**New York, New York 10019-6829**
**Pursuant to the Louisiana Long Arm Statute, La. R.S. 13:3204**